IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOGAN SHARP,

    Petitioner,                  No.  2:11-cv-3233 JFM

    vs.

R. HILL, Warden,

    Respondent.              <u>ORDER</u>

    _____/

## I.  INTRODUCTION

Petitioner is a state prisoner proceeding *pro se* with an application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The parties have consented to Magistrate Judge jurisdiction.  (<u>See</u> Dkt. Nos. 4, 8.)  In 2009, a jury convicted petitioner of second degree robbery and the trial court found prior conviction allegations to be true.  Petitioner received a sentence of eleven years imprisonment.  Petitioner raises three claims in his federal habeas petition; specifically:  (1) the trial court erred in permitting the rebuttal testimony of Garrett Churchill ("Claim I"); (2) trial counsel was ineffective in failing to request a pinpoint cautionary defense jury instruction ("Claim II"); and (3) cumulative error ("Claim III").  For the following reasons, the habeas petition will be denied.

## II.  FACTUAL BACKGROUND[1]

On February 8, 2009, a man wearing a hooded sweatshirt and a bandanna entered the Alpine Liquor store in South Lake Tahoe between 10:00 and 11:00 p.m.  The man brandished a gun and demanded that the clerk put money in a bag.  The clerk refused, thinking it was a joke.  The man left.  A person robbed another South Lake Tahoe Liquor store, the Bottle Shop, at around 10:57 p.m. that evening.  About $1,500 in cash was taken from the Bottle Shop.

Stacie Ward knows defendant and is Garrett Churchill's fiancee.  She and Churchill moved to his friend Andre's apartment in January 2009 after Churchill refused to serve a jail sentence.

According to Ward, Churchill and defendant entered the apartment's front door in a jittery and excited state one night.  Churchill said he had gone to the Alpine Liquor store and tried to rob it, but the clerk laughed at him, so he then went to the Bottle Shop, where he had more success.  Defendant was present during the conversation, and stayed in the apartment for about an hour.

Later, defendant suggested that Ward and Churchill go to Gardnerville.  They agreed, and defendant drove them and another person in his Dodge Durango.  After dropping the other passenger off, defendant drove Ward and Churchill towards Gardnerville, but was stopped by the Highway Patrol.

Defendant was stopped for speeding in a white Dodge Durango at 12:57 a.m. on February 10, 2009.  Defendant's driver's license was limited to driving to and from work or to and from his DUI class.  The Durango's tire treads matched tread marks found in the snow at the Alpine Liquor store after the attempted robbery.

Defendant's friend Garret [sic] Churchill testified that he tried to rob the Alpine Liquor store on February 8, 2009.  Churchill showed a pistol to the store's clerk, who laughed at him and said it was a joke.  The clerk refused to give him any money, so Churchill left the store and returned to the Durango, which was parked by the Tahoe Donut shop.  Defendant was the driver.

Churchill, still driven by defendant, next went to the Bottle Shop.  On the way to the Bottle Shop they passed police cars going to Alpine Liquor.  After they parked across the street from the Bottle Shop, Churchill left the Durango, entered the store, and demanded money.  The clerk gave him money, Churchill got in the Durango, and they went back to Andre's house, where Ward was waiting.

---

[1]  The factual background is taken from the Court of Appeal of the State of California, Third Appellate District opinion dated May 19, 2011.  (See Resp't's Answer Ex. A.)

2

Defendant testified that he would drive Churchill around because Churchill did not have a car. Churchill called defendant almost every day to ask for rides, and defendant would accommodate him once or twice a week.

Churchill called defendant on February 8 and asked him to come over so Churchill could see a friend. He had borrowed about $400 from defendant a couple of weeks before, and told defendant he could pay some of the money back after collecting from the friend.

Churchill first directed defendant to Churchill's old apartments to look for another neighbor. Churchill came back after a few minutes and told defendant he did not find him. Defendant next drove Churchill back to town, where Churchill continued to look. Defendant drove to a house; Churchill got out and knocked on the door, but there was no answer, so Churchill returned to the car. Next, Churchill directed defendant to the Tahoe Donut shop, where defendant parked and Churchill left the Durango, returning more than five minutes later.

Churchill then directed defendant to an apartment or motel across from the Bottle Shop. Defendant did not see where Churchill went when he left the Durango. Churchill returned within a few minutes, and defendant took him to Andre's. Defendant was agitated when he arrived at Andre's apartment because he had to drive all over town.

Defendant never heard Churchill tell Ward that he had tried to rob the Alpine Liquor store and robbed the Bottle Shop. At no point that night did Churchill tell defendant about his plans to rob either store. He denied driving with Churchill to commit robberies.

Defendant presented evidence he attended a court mandated class on driving under the influence on February 9, 2009. Defendant's father testified that defendant worked for him since December 2009 and that his attendance was good. Defendant worked weekends for a roofing company in Gardnerville.

Churchill testified on rebuttal that he and defendant first went to the Swiss Mart off Emerald Bay Road, but left because it was closed, and then drove to Alpine Liquor. After Churchill told defendant to park by Tahoe Donut, he got out and tried to rob Alpine Liquor. Churchill next told defendant to go towards Ski Run, where he could pick up some money.

As defendant drove, he asked Churchill, "How much did you get?" Churchill believed he told defendant that he got nothing. As they drove to the Bottle Shop, Churchill tried to get defendant to agree to rob the store. Churchill told defendant it would be okay, as Churchill robbed stores many times before and never got caught. Defendant was initially resistant, but eventually agreed to the

3

1     robbery.

2     Churchill directed defendant to the Bottle Shop once they passed the Ski Run area. He told defendant to park by some nearby apartments in order to avoid surveillance cameras. Churchill then got out and robbed the Bottle Shop, after which they returned to Andre's. He gave $500 to defendant when he was arrested, and told him to take care of Ward and get the Durango out of impound.

    Churchill said he got a plea deal, getting a three-year sentence instead of a possible 15- to 17-year term because he was honest and worked as an informant. He admitted falsely telling a defense investigator that defendant knew nothing about the robberies. Churchill was in jail at the time and was afraid of being labeled a snitch; he called the defense investigator at the suggestion of another inmate at the jail. Churchill believed a snitch was someone who informed on his partner in crime after being arrested.

    Defendant testified on surrebuttal that Churchill never used the term "robbery" when they left Alpine Liquor. Churchill did not give defendant any money when he was arrested.

(Resp't's Answer Ex. A at p. 2-6.)

### III. PROCEDURAL HISTORY

After petitioner was convicted and sentenced, he appealed to the California Court of Appeal, Third Appellate District. His appeal raised the three issues he raises in his federal habeas petition. The California Court of Appeal affirmed the judgment in a written decision on May 19, 2011. Petitioner then filed a petition for review in the California Supreme Court. Petitioner only raised the issue associated with Claim I of his federal habeas petition in his petition for review to the California Supreme Court. (See Resp't's Lodged Doc. 6.) The California Supreme Court summarily denied the petition for review on August 10, 2011.

Petitioner then filed his federal habeas petition. Respondent answered the petition in February 2012 and petitioner subsequently filed a traverse.

### IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994);

Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  See 28 U.S.C. 2254(d).  When no state court has reached the merits of a claim, *de novo* review applies.  See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be

reasonably applied, we may look for guidance to circuit precedents.").

## V.  ANALYSIS OF PETITIONER'S CLAIMS

### A.  Claim I

In Claim I, petitioner argues that the trial court violated his due process rights when it allowed Garrett Churchill to testify in rebuttal. The California Court of Appeal was the last state court to issue a reasoned decision on this claim. It stated as follows:

> Defendant contends the trial court committed prejudicial error by allowing Churchill's rebuttal testimony.
>
> At an Evidence Code section 402 hearing after the defense rested, defendant objected to Churchill being allowed to testify on rebuttal about any conversation he had with defendant regarding the robbery while defendant drove him to the Bottle Shop. Defendant argued this testimony was not rebuttal, and should have been presented during the People's case-in-chief. The trial court found defendant's testimony that he had no conversation about the robbery with Churchill opened the matter for rebuttal, and found the People had made a successful offer of proof showing a basis for Churchill to testify on rebuttal.
>
> Rebuttal evidence is generally restricted to evidence made necessary by the defendant's case in the sense that he has introduced new evidence or made assertions not implicit in his denial of guilt. (People v. Carter (1957) 48 Cal.2d 737, 753-754.) The rule serves to avoid confusion through the orderly presentation of evidence, to prevent a party from magnifying evidence by dramatically introducing it late in the trial, and to avoid unfair surprise that can result when a party is confronted with an additional place of crucial evidence at the end of the trial. (Id. at p. 753.) The decision whether to admit rebuttal evidence over an objection of untimeliness is a matter entrusted to the trial court's discretion, which cannot be reversed absent a showing of abuse. (People v. Mayfield (1997) 14 Cal.4th 668, 761.)
>
> Defendant argues Churchill's rebuttal testimony addressed defendant's knowledge of Churchill's intent, which the People had to prove when prosecuting defendant on an aiding and abetting theory. (See People v. Beeman (1984) 35 Cal.3d 547, 560 [aiding and abetting require knowledge of perpetrator's criminal purpose and intent or purpose to encourage or facilitate the offense].) According to defendant, Churchill's rebuttal testimony simply addressed assertions which are implicit in defendant's denial of guilt, and therefore should have been presented in the People's case-in-chief.

6

> Defendant's direct examination contained a detailed account of where he drove Churchill which contradicted Churchill's initial testimony on several points. His testimony that he and Churchill never discussed the robbery at any point during their trip likewise is not implicit in his denial of guilt, but is instead new evidence attacking the People's case. After all, the People could not know what defendant was going to say to meet the evidence against him until he said it. Although Churchill's rebuttal testimony might have been admissible during the People's case-in-chief, it was permissible rebuttal evidence in light of defendant's testimony. It was not an abuse of discretion for the trial court to allow Churchill's rebuttal testimony.
>
> Defendant further asserts the rebuttal testimony violates his federal constitutional rights to due process and a fair trial. His contention is forfeited by failing to raise a constitutional objection at trial. (People v. Partida (2005) 37 Cal.4th 428, 433-434.) It is also without merit as the rebuttal testimony was properly admitted.

(Resp't's Answer Ex. A at p. 6-8.)

Respondent first argues that petitioner's federal constitutional argument in Claim I is procedurally defaulted. Respondent notes that the state court determined that petitioner failed to raise his federal constitutional objection at trial.

A state court's refusal to hear the merits of a claim because of the petitioner's failure to follow a state procedural rule is considered a denial of relief on an independent and adequate state ground. See Harris v. Reed, 489 U.S. 255, 260-61 (1989). The state rule for these purposes is only "adequate" if it is "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 424 (1991); see also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied."). The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (citing Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Furthermore, procedural default can only block a claim in federal court if the state court, "clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263. This means that the state court must have specifically stated that it was denying relief on a procedural ground. See Ylst v. Nunnemaker, 501 U.S. 797,

803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993).

Pursuant to Section 353 of California's Evidence Code, also known as the contemporaneous objection rule, "evidence is admissible unless there is an objection, the grounds for the objection are clearly expressed, and the objection is made the time the evidence is introduced." Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002). The Ninth Circuit has held that California's contemporaneous objection rule is an adequate and independent state procedural rule when properly invoked by the state courts. See Rich v. Calderon, 187 F.3d 1064, 1066 (9th Cir. 1999).

When the state court discusses a procedural default but also reaches the merits of a claim, a denial of the claim cannot necessarily be said to have relied on the on the procedural default. See Thomas v. Hubbard, 273 F.3d 1164, 1176 (9th Cir. 2001), overruled on other grounds, Payton v. Woodford, 346 F.3d 1204 (9th Cir. 2003) (citing Harris, 489 U.S. at 263); see also Panther v. Hames, 991 F.2d 576, 580 (9th Cir. 1993). As the Ninth Circuit stated in Panther, "because the Alaska Court of Appeals considered Panther's claims on the merits . . . so can we." 991 F.2d at 580. In Thomas, the state court discussed the issue of procedural default but then went on to deny the claim because any error was harmless. See 273 F.3d at 1176. The Ninth Circuit held: "[i]n so doing, the [state] court left the resolution of the procedural default issue uncertain rather than making a clear and express statement that its decision was based on procedural default." Id.

In this case, the California Court of Appeal discussed the procedural default issue but also denied the claim on the merits as well by determining that it was without merit. Under these circumstances, procedural default will not operate to bar federal review of this claim on the merits.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A state court evidentiary ruling admitting evidence, even if erroneous under state law, is not grounds for

8

federal habeas relief unless the ruling renders the state proceeding so infused with unfairness as to violate due process. See id. at 75; see also Payne v. Tennessee, 501 U.S. 808, 825 (1991) (If evidence is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998); Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). "Only if there are no permissible inferences the jury can draw from the evidence can its admission violate due process." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991); see McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir. 1993) (as amended); see also Estelle, 502 U.S. at 70 (finding where challenged evidence is relevant to issue in case, its admission cannot be said to have violated defendant's due process rights).

The Supreme Court "ha[s] defined the category of infractions that violate fundamental fairness very narrowly." Estelle, 502 U.S. at 72-73 (citation and internal quotation marks omitted). A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005). The Ninth Circuit observed that, on the erroneous admission of prejudicial evidence, there is no clearly established Supreme Court authority:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim this court cannot use its own precedent to find a state court ruling unreasonable. [Carey v.] Musladin, 549 U.S. 70, 77, (2006).
>
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." Musladin, 549 U.S. at

9

1  77, 127 S. Ct. 649, 166 L. Ed. 2d 482.  Under the strict standards
2  of AEDPA, we are therefore without power to issue the writ on the
   basis of [the petitioner's] additional claims.

3  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

4  First, to the extent that petitioner claims that the trial court failed to comply with state procedures and law, his claim is not cognizable on federal habeas review.  See Estelle, 502 U.S. at 67-68 (reiterating "it is not the province of a federal habeas court to reexamine state court determinations on state law questions").  Next, to the extent that petitioner's claim presents a federal question, it fails because petitioner cannot demonstrate that the state court's ruling was contrary to, or an unreasonable application of clearly established federal law.  Estelle generally held that admission of evidence "relevant to an issue in the case does not violate due process."  See 502 U.S. at 70.

In this case, petitioner claims that the trial court erred in admitting Churchill's rebuttal testimony.  The Court of Appeal's ruling that Churchill's testimony was permissible on rebuttal was not unreasonable and did not render the trial so fundamentally unfair as it rebutted defendant's testimony.  As noted by the Court of Appeal, defendant's testimony regarding his conversations with Churchill (or lack thereof) opened up the possibility for rebuttal testimony by Churchill as to those conversations.  Accordingly, habeas relief is not warranted on this claim.

B.  Claim II

In Claim II, petitioner asserts that trial counsel was ineffective by failing to request a pinpoint cautionary instruction as to the weakness of Churchill's "snitch" testimony.  Respondent asserts that Claim II is unexhausted.  Specifically, Respondent asserts that while petitioner raised Claim II to the California Court of Appeal, he did not raise the claim to the California Supreme Court.

Exhaustion requires that the federal claim be fairly presented to the state's highest court to which the appeal is available.  See Cooper v. Neven, 641 F.3d 322, 326 (9th Cir. 2011) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Picard v. Connor, 404 U.S. 270, 275

1  (1971)). A review of the record indicates that while petitioner raised Claim II in his appeal to

2  the California Court of Appeal (see Resp't's Lodged Doc. 1.), he failed to include this claim in

3  his petition for review to the California Supreme Court. (See id. Doc. 6.) Thus, Claim II is

4  unexhausted. However, even though Claim II is unexhausted, a court can dismiss a claim on the

5  merits if it is determined that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614,

6  624 (9th Cir. 2005). For the following reasons, Claim II can be denied on the merits because it is

7  not "colorable."

> The Court of Appeal's opinion provides the background to Claim II; specifically:
>
> Defendant claims trial counsel was ineffective by not requesting a cautionary pinpoint instruction pointing out the inherent weakness in "snitch" testimony. He is wrong.
>
> "To prevail on a claim of ineffective assistance of counsel, defendant 'must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.]'" (People v. Hart (1999) 20 Cal.4th 546, 623.) "Prejudice occurs only if the record demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Citation.]" (People v. Lucero (2000) 23 Cal.4th 692, 728.)
>
> The jury was instructed with CALCRIM No. 335 that if the crimes were committed, Churchill was an accomplice, and: "Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that statement or testimony the weight you think it deserves after examining it with care and caution and in light of all the other evidence." The instruction also informed the jury that defendant could not be convicted of the charged crimes on the basis of the accomplice's testimony alone, and the jury could consider the accomplice's testimony only if it is supported by other evidence connecting defendant to the crime which is separate from the accomplice evidence.
>
> Defendant asserts competent counsel would have asked for an additional instruction pointing out Churchill was a "snitch" and for the jury to view his testimony with distrust. As a model, defendant suggests section 1127a, subdivision (b), which provides that in a case when an in-custody informant testifies, the jury should be instructed as follows: "'The testimony of an in-custody informant should be viewed with caution and close scrutiny. In evaluating

such testimony, you should consider the extent to which it may have been influenced by the receipt of, or expectation of, any benefits from the party calling that witness.  This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight to which you find it to be entitled in the light of all the evidence in the case.'"

Section 1127a is inapplicable, as it defines "in-custody informant" as "a person, other than a codefendant, percipient witness, *accomplice*, or coconspirator whose testimony is based upon statements made by the defendant while both the defendant and the informant are held within a correctional institution." (§ 1127a, subd. (a), italics added.)  Churchill may have called himself a "snitch," but that term has no special meaning.  He was an accomplice as a matter of law, and the jury was given the standard instruction on accomplice witnesses.

Defendant claims CALCRIM No. 335 might be adequate when the jury is reviewing the elements of the offense, but it is inadequate where, as here, the defense theory "revolves around credibility and who one should believe."  He argues the instruction was insufficient because it failed to bring to the jury's attention the additional benefits gained by "fulfilling" the "role of a "snitch and informant."

"Under appropriate circumstances, 'a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case by, among other things, relating the reasonable doubt standard of proof to particular elements of the crime charged. [Citations.]  But a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].' [Citation.]" (People v. Coffman and Marlow (2004) 34 Cal.4th 1, 99.)

The jury was already instructed to view Churchill's testimony with caution and not to consider the testimony unless it was corroborated.  Additional instruction that his testimony should be viewed with distrust would be duplicative and argumentative, and would have been refused by the trial court.  "Counsel's failure to make a futile or unmeritorious motion or request is not ineffective assistance." (People v. Szadziewicz (2008) 161 Cal.App.4th 823, 836.)  Counsel was not ineffective for failing to request an improper pinpoint instruction.

(Resp't's Lodged Doc. 4 at p. 8-11.)

The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

12

ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance. See id. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, – U.S. –, 131 S.Ct 770, 792 (2011). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).

Petitioner has failed to show that counsel's conduct fell below an objective standard of reasonableness and/or that he suffered prejudice by counsel's failure to request a pinpoint instruction that Churchill was a "snitch." As noted by the Court of Appeal, the template instruction that petitioner believed was relevant was not applicable because Churchill was an accomplice. See CAL. PENAL CODE § 1127a ("[A]n 'in-custody informant' means a person, other than a codefendant, percipient witness, accomplice, or coconspirator whose testimony is based upon statements made by the defendant while both the defendant and the informant are held within a correctional institution."). Accordingly, petitioner's trial counsel was not

ineffective for failing to request an instruction that would have been denied. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance . . . ."). Additionally, as the Court of Appeal noted, the jury was instructed to view Churchill's accomplice testimony with caution. (See Clerk's Tr. at p. 782 ("Any (statement/ or testimony) of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that (statement/ or testimony) the weight you think it deserves after examining it with care and caution and in the light of all the other evidence.").

      Petitioner also failed to show that the outcome of his proceeding would have been different to a reasonable probability had counsel requested an additional pinpoint instruction. The jury was instructed to view Churchill's testimony with caution because he was an accomplice. The jury is deemed to have followed this instruction. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). An additional instruction would have been duplicative and petitioner fails to show prejudice. Accordingly, Claim II does not warrant federal habeas relief.

      C.  Claim III

      In Claim III, petitioner argues that he is entitled to habeas relief based on the cumulative errors of Claims I and II. Respondent argues that Claim III is unexhausted because petitioner did not raise it to the California Supreme Court in his petition for review. Respondent is correct that this claim is unexhausted as petitioner only raised Claim I in his petition for review. Nevertheless, as with Claim II, Claim III will be denied on the merits as it is not "colorable."

      "Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." Jackson v. Brown, 513 F.3d 1057, 1085 (9th Cir. 2008). The combined effect of multiple trial errors may give rise to a due process violation if the trial was rendered fundamentally unfair, even where each error considered individually would not require

reversal. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007). The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," see Chambers v. Mississippi, 410 U.S. 284, 294 (1973), thereby having a "substantial and injurious effect or influence" on the jury's verdict. See Parle, 505 F.3d at 927 (citation omitted).

As described above, petitioner failed to show that the trial court erred in failing to strike Churchill's rebuttal testimony. Furthermore, trial counsel was not ineffective in failing to request a pinpoint instruction. Accordingly, petitioner fails to show that any errors occurred in Claims I and II. There is no showing that his cumulative error argument is "colorable." Thus, Claim III does not warrant federal habeas relief.

## VI. CONCLUSION

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See FED. R. APP. P. 22(b). For the reasons set forth in this order, petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

/////
/////
/////
/////
/////
/////

In accordance with the above, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus is denied;
2. A certificate of appealability shall not issue; and
3. The Clerk is directed to close this case.

DATED: January 7, 2013.

*[signature]*
UNITED STATES MAGISTRATE JUDGE

14
shar3233.157